IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREAT WEST CASUALTY COMPANY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>DEKEYSER EXPRESS, INC., TNT LOGISTICS)<br>CORPORATION, TRELLEBORG YSH, INC., )<br>and LOLA CAMP )<br>)<br>Defendants. )<br>)<br>and )<br>)<br>TRELLEBORG YSH, INC. )<br>)<br>Counterplaintiff, )<br>)<br>v. )<br>)<br>GREAT WEST CASUALTY COMPANY )<br>)<br>Counterdefendant. ) | No. 05 C 2681<br><br>Magistrate Judge Nan R. Nolan |

## MEMORANDUM OPINION & ORDER

In this declaratory judgment action, the parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Each of the defendants in this matter have moved the court to transfer the case to the United States District Court in the Central District of Illinois, Peoria Division ("Central District") pursuant to 28 U.S.C. § 1404(a). For the reasons explained below, the defendants' motions to transfer are granted.

I. BACKGROUND

This case is a declaratory judgment action brought by plaintiff Great West Casualty

Company ("Great West") against corporate defendants DeKeyser Express, Inc. ("DeKeyser"), TNT Logistics Corporation ("TNT"), Trelleborg YSH, Inc. ("Trelleborg") and individual defendant Lola Camp ("Camp").

The declaratory judgment action arises out of a personal injury lawsuit, captioned *Camp v. TNT Logistics Corp, et al.*, 04 CV 1358, which commenced in the Central District on October 18, 2004.[1] In the underlying personal injury action, Camp, who is a truck driver, brought negligence claims against TNT and Trelleborg, seeking compensation for injuries she sustained while delivering auto parts from Trelleborg to TNT. (*See generally* Camp Compl., attached as Ex. 1 to Great West's Am. Compl.) TNT and Trelleborg, in turn, sued DeKeyser and Camp's employer, Transport Leasing Contract, Inc. ("TLC"), as third party defendants, raising claims against both DeKeyser and TLC for contribution, as well as claims against DeKeyser for breach of contract based on failure to indemnify and defend TNT and Trelleborg against Camp's claims and, alternatively, for breach of contract based on failure to procure insurance. (*See generally* TNT's Third Party Compl. and Trelleborg's Am. Third-Party Compl., attached as Ex. 2-3 to Great West's Am. Compl., respectively.) According to TNT and Trelleborg, DeKeyser has a contractual duty to indemnify and defend them against Camp's claims. (TNT's Third Party Compl. at counts III-IV; Trelleborg's Am. Third Party Compl. at counts II-III.) However, when TNT and Trelleborg tendered the defense of Camp's claims to DeKeyser and DeKeyser's liability insurer, Great West, DeKeyser, through Great West, refused to accept the tender. TNT and Trelleborg allege that in rejecting the tender, DeKeyser breached its contract, or alternatively, if

---

[1] Camp originally filed her complaint in the McClean County Circuit Court on August 31, 2004, but TNT removed the case to federal court on October 18, 2004.

2

the court determines that refusal of the tender was proper and not a breach of contract, then DeKeyser breached its contractual obligations to provide insurance. (*Id.*)

DeKeyser is insured under a commercial lines insurance policy issued by Great West ("the Policy"); TLC is an additional insured under that Policy. (*See, e.g.*, Great West's Am. Compl. ¶¶ 21, 40.) After DeKeyser was brought into the personal injury action, DeKeyser tendered the defense of the third party claims to Great West under the Policy. (*See, e.g., id.* ¶ 22.) Great West is currently defending DeKeyser in the underlying personal injury case, but is doing so under a reservation of rights that it has no duty to indemnify or defend DeKeyser against those third-party claims.

On May 5, 2005, Great West commenced this declaratory judgment action, seeking an adjudication of its rights and responsibilities under the Policy. In counts I and II of the amended complaint, Great West seeks a declaration that Great West has no duty to defend or indemnify DeKeyser in the third party actions brought by TNT and Trelleborg. More specifically, Great West contends that coverage is excluded by two provisions in the Policy: the Employee Indemnification and Employer's Liability exclusion, an exclusion that applies to bodily injuries suffered by employees of the insured, and the Contractual Liability exclusion, an exclusion for liability assumed under contract. Additionally, Great West contends that the third party claims are not covered by the Policy because DeKeyser provided late notice to Great West regarding Camp's accident. In count III, Great West seeks a declaration that it has a right to control DeKeyser's defense in the personal injury action. In count IV, Great West seeks a declaration that it has no duty to indemnify TNT and Trelleborg against Camp's claims because they are not additional insureds under the Policy.

Each of the defendants have asked the court to transfer the declaratory judgment action to the Central District under § 1404(a). Specifically, defendant Trelleborg filed a motion to transfer which defendant TNT joined and defendants DeKeyser and Camp filed separate, but very similar, motions to transfer. Because the motion and briefing filed by Trelleborg was the most thorough of the defendants' motions, the following discussion focuses primarily on that motion and plaintiff Great West's opposition.

## II.  DISCUSSION

Section 1404(a) provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In moving to transfer under § 1404(a), the movant "concedes that venue properly lies in both the transferor and transferee district but argues that transfer will save the parties, witnesses and public unnecessary inconvenience and expense." *Black & Decker Corp. v. Vermont Amer. Corp.*, 915 F. Supp. 933, 936 (N.D. Ill. 1995). The moving party bears the burden of establishing "that the transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986). In determining whether the movant has satisfied its burden, the court considers three factors: "the convenience of the parties, the convenience of the witnesses and the interests of justice." *Black & Decker*, 915 F. Supp. at 936 (citing *Coffey*, 796 F.2d at 219). Because assessing the factors for and against transfer "necessarily involves a large degree of subtlety and latitude," the decision whether to grant a motion to transfer is left to the sound discretion of the trial court. *Id.* However, "[t]ransfer is inappropriate if it 'merely transforms an inconvenience for one party into an inconvenience for the other party.'" *Brandon Apparel Group, Inc. v. Quitman Mfg. Co. Inc.*,

4

42 F. Supp. 2d 821, 834 (N.D. Ill. 1999).

The defendants contend that the Central District is a more convenient forum than the Northern District because many of the relevant witnesses reside in the Central District, none of the parties or witnesses who would participate at trial are in this District, and there is no nexus between either the declaratory judgment action or the underlying personal injury action and this district. Great West opposes the motions to transfer, arguing that defendants have failed to establish that the Central District is clearly more convenient than this district. For the reasons that follow, after assessing the convenience of the parties and witnesses as well as the interests of justice, the court agrees with defendants that transfer is warranted, and consequently grants the motions to transfer.

### A. The Convenience of the Parties and Witnesses

In assessing the convenience of the parties and witnesses, the court considers: "(1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (3) the convenience of the witnesses; and (5) the convenience of the parties of litigating in the respective forums." *Law Bulletin Publ'g Co. v. LRP Publ'ns, Inc.*, 992 F. Supp. 1014, 1017 (N.D. Ill. 1998). These factors are addressed in turn.

Courts generally give deference to the plaintiff's choice of forum, particularly if it is plaintiff's home forum, except in cases in which the chosen forum lacks any significant connection with the cause of action. *Sanders v. Franklin*, 25 F. Supp. 2d 855, 858 (N.D. Ill. 1998); *Law Bulletin*, 992 F. Supp. at 1017; *Heller Fin., Inc. v. Riverdale Auto Parts, Inc.*, 713 F. Supp. 1125, 1129 (N.D. Ill. 1989). Here, the Northern District is not Great West's home forum—Great West's principal place of business is in Nebraska, its state of incorporation.

Moreover, there is no connection between the Northern District and the cause of action. The only link to this forum is that certain of the corporate defendants are subject to personal jurisdiction here, thus making this district an appropriate venue under 28 U.S.C. § 1391(a) and (c). Plaintiff's choice of forum is just "one of many factors to be viewed by the court when making its determination" regarding the motion to transfer, *Coats Co., Inc. v. Vulcan Equip. Co., Ltd.*, 459 F. Supp. 654, 656 (N.D. Ill. 1978), and in this case, it is not a compelling factor.

Turning to the situs of material events, this factor weighs in favor of the Central District. Great West argues that the material events occurred not only in the Central District (where Camp's accident occurred) but also in Bloomington, Indiana (at the claim office where Great West first received notice about Camp's accident) and in Arden Hills, Minnesota (where TLC is located). Regardless whether forums in Indiana and Minnesota are also connected to the material events here (an issue the court need not decide), Great West effectively concedes that the Northern District is not the situs of any material events. This factor weighs in favor of the Central District over the Northern District.

The next factor, the relative ease of access to sources of proof, usually has to do with the location of documentary evidence in the case. *See Law Bulletin*, 992 F. Supp. at 1018. None of the parties have suggested that the files and records in this case are so voluminous that they cannot be easily transferred from one district to another. Based on this factor, the Northern District and the Central District are equally convenient.

As for the convenience of the witnesses, this factor "is often viewed as the most important factor in the transfer balance." *Id.* In Great West's view, the two main factual issues that would involve witness testimony are (1) whether or not Great West received adequate notice

of Camp's accident and (2) Camp's employment status.[2] On the notice issue, the relevant witnesses are all employees of the parties: Great West's employees Christopher Moorman and Robert Todd, both of whom live in Bloomington, Indiana, and four witnesses from DeKeyser (3 current employees and one former employee), all of whom reside in the Central District. On the employment issue, the potential witnesses include the four DeKeyser witnesses as well as defendant Lola Camp, who also resides in the Central District, and two witnesses employed by TLC, who is not a party to this action, but who is a party to the underlying case. The TLC witnesses are Kim Hrubby, who lives in the Minneapolis-St. Paul area in Minnesota, and Susan Litchy, who lives in Chesterton, Indiana.[3]

Regarding the parties' employee-witnesses, Great West contends that Chicago is more convenient for its witnesses and Peoria is more convenient for the defendants' witnesses (Camp and the DeKeyser witnesses), so there is no forum that is clearly more convenient. Although Great West submitted an affidavit explaining why it considers Chicago more convenient for its witnesses,[4] the reality is that if this case goes to trial, Great West's employee-witnesses will have to travel whether the trial is in Chicago or Peoria, whereas DeKeyser's witnesses and Camp will only have to travel if the trial is in Chicago. This factor favors transfer to Peoria, even if only

---

[2]Although Great West ultimately will argue that Camp's employment status is irrelevant, Great West treats it as one of the factual issues for purposes of this motion because defendants focused on that issue.

[3]There is another non-party witness, Heidi Johnson of Lumbermen's Underwriting Alliance who also lives in the Minneapolis-St. Paul area, but neither party identified what she issues she might need to testify about. The court thus shall not address her further.

[4]According to Great West, Chicago is more convenient because Moorman and Todd are familiar with the City, could attend to multiple matters on a single trip to Chicago, and Great West's attorneys are here. The location of Great West's attorneys is not a relevant factor, however, *Coats*, 459 F. Supp. at 657 n.3, and the other cited reasons are not particularly persuasive.

slightly.

Regarding the convenience to non-party witnesses, this factor is generally assigned more weight than the convenience to employee-witnesses. *See Brandon Apparel Group*, 42 F. Supp. 2d at 834. Great West argues that the convenience of the non-party witnesses weighs against transferring this case to the Central District because Hrubby can fly directly from Minneapolis-St. Paul to Chicago (as opposed to taking a connecting flight through Chicago on to Peoria) and it is easier for Litchy to drive the fifty miles from Chesterton, Indiana to Chicago than to get to Peoria. Focusing solely on the declaratory judgment action, the court must agree that Peoria is not clearly more convenient for the TLC witnesses, so the convenience of non-party witnesses weighs against transferring the case. But although TLC is not a party in this case, TLC is a party in the personal injury action pending in the Central District, so if the case were transferred to the Central District, TLC would only have to participate in litigation in one forum, not two. In any event, as explained further below, the court disagrees with Great West that the convenience of the non-party witnesses is the dispositive factor in this case.

The remaining factor courts consider when assessing the convenience of the parties and witnesses is the convenience of the parties of litigating in the respective forums. According to Great West, assessing the convenience of the parties results in, at best, a tie between the Northern and Central Districts. Great West maintains that although there are four named defendants and only one plaintiff, defendant Camp is only a nominal defendant. Taking Camp out of the analysis, there are four parties—Great West, TNT, DeKeyser and Trelleborg—and the convenience to those parties, in Great West's view, is tied to the location of their counsel. Two of those four parties (Great West and TNT) are represented by Chicago counsel, whereas the

other two (DeKeyser and Trelleborg) are represented by downstate counsel. Thus, Great West argues, neither forum is clearly more convenient that the other. But Great West's argument misses the mark. For one thing, the location of Great West's attorneys is not relevant. *Coats*, 459 F. Supp. at 657 n.3. Additionally, although Great West contends that counting the number of parties is a blunt means of measuring inconvenience, the reality is that four of the five parties agree (or three of the four, if Camp is excluded) that it would be more convenient to litigate in the Central District than in the Northern District. The fact that the defendants outnumber the plaintiff and prefer the Central District is not dispositive, but it is a factor the court will consider.

### B. Interests of Justice

In assessing whether transferring the case will promote the interests of justice, the focus is on "'traditional notions of judicial economy, rather than the private interests of the litigants and their witnesses.'" *Law Bulletin*, 992 F. Supp. at 1019 (citation omitted). Relevant considerations include the presence of related litigation, the relative speed with which the case will get to trial, and, in diversity cases, the court's familiarity with applicable law. *Black & Decker*, 915 F. Supp. at 939; *TIG Ins. Co. v. Brightly Galvanized Prod., Inc.*, 911 F. Supp. 344, 346 (N.D. Ill. 1996). The court may also consider "the relation of the community to the issue of the litigation and the desirability of resolving controversies in their locale," *Sanders*, 25 F. Supp. 2d at 857. These factors are addressed in reverse order.

The relation of the community to the issue of the litigation and the desirability of resolving controversies in their locale favors transfer to the Central District, particularly given the lack of any real tie between the Northern District and the parties or the issues in the litigation. On the other hand, both the Northern District and the Central District are familiar with Illinois

law, so the court's familiarity with applicable law does not support transferring the case. As for the relative speed with which the case will get to trial, there is no significant difference between the Northern District and the Central District,[5] so this consideration does not support transferring the case, either.

The remaining consideration—the presence of related litigation in the Central District—strongly favors transferring the case. Great West disagrees, arguing that the declaratory judgment action and the personal injury action are dissimilar because the former involves issues of insurance coverage whereas the latter involves issues of liability and damages. But in making this argument, Great West overlooks the insurance coverage issues that have been raised in the personal injury action. In the underlying action, both TNT and Trelleborg brought third-party claims against DeKeyser for breach of contract based on failure to indemnify and defend TNT and Trelleborg against Camp's claims and, alternatively, for breach of contract based on failure to procure insurance. Specifically, as explained earlier, TNT and Trelleborg allege that when they tendered the defense of Camp's personal injury claims to DeKeyser and DeKeyser's liability insurer, Great West, DeKeyser, through Great West, refused to accept the tender. According to TNT and Trelleborg's respective third-party complaints, DeKeyser breached its contract in rejecting the tender, or alternatively, if the court determines that refusal of the tender was proper

---

[5]In assessing the speed at which the case will proceed to trial, courts generally find two statistics relevant: the median number of months from filing to disposition and the median number of months from filing to trial. *Brandon*, 42 F. Supp. 2d at 835. According to the Federal Court Management Statistics for 2004 (the most recent statistics, available at: www.uscourts.gove/fcmstat/index.html), the median number of months from filing to disposition was slightly lower in the Northern District than in the Central District (5.9 in the Northern District compared to 9.0 in the Central District), but the median number of months from filing to trial was slightly higher in the Northern District than in the Central District (28.4 in the Northern District compared to 25.4 in the Central District). These statistics indicate that the case will be resolved at approximately the same rate in either district.

and not a breach of contract, then DeKeyser breached its contractual obligations to provide insurance. Great West's duty to defend and indemnify is thus at issue in both the personal injury action and the declaratory judgment action. Because of this overlap, interests of judicial economy favor transferring the case to the Central District to avoid duplicative and redundant judicial efforts. In other words, it makes sense for only one district to be involved in the insurance coverage issues.

### C.     Assessment of Relevant Factors Favors Transfer

Assessment of the convenience of the parties and witnesses and the interests of justice leads the court to conclude that transfer to the Central District is appropriate. Unlike the Central District, the Northern District has no real connection to the litigation. Moreover, although the Northern District may be somewhat more convenient for non-party witnesses in the event this case goes to trial,[6] the Central District is more convenient for four of the five parties. Further, if this case is resolved on summary judgment (as Great West repeatedly suggests it should be), the non-party witnesses will never need to travel to the Central District. Finally, the fact that Great West's duty to defend and indemnify is at issue in both the personal injury action and the declaratory judgment action tilts the scales in favor of transfer. It is more efficient for one district to address the overlapping insurance coverage issues. Accordingly, the court finds that the Central District is clearly more convenient than the Northern District, and thus exercises its discretion to transfer the declaratory judgment action.

---

[6] As for the depositions of the non-party witnesses, it is a common practice to depose non-party witnesses in their home forum.

11

## C. CONCLUSION

For the reasons set forth above, the defendants' motions to transfer are granted; this case is hereby transferred to the Central District of Illinois, Peoria Division. Further, in light of the transfer, the court shall not address the motion to dismiss recently filed by defendant DeKeyser.

ENTERED:

*Nan R. Nolan*

NAN R. NOLAN
United States Magistrate Judge

Dated: October 31, 2005